**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Paul Savas COLUMBUS,
Defendant–Appellant.**

**No. 88–3089.**

United States Court of Appeals,
Ninth Circuit.

Submitted April 24, 1989 *.

Decided Aug. 7, 1989.

Michael T. Kenney, Santa Ana, Cal., for defendant-appellant.

Harry J. McCarthy, Asst. U.S. Atty., Seattle, Washington, for plaintiff-appellee.

Before FERGUSON, HALL and KOZINSKI, Circuit Judges.

FERGUSON, Circuit Judge:

Appellant Paul Savas Columbus pled guilty to two counts of smuggling semiconductors into the United States in violation

---

* The panel finds this case appropriate for submission without oral argument pursuant to Ninth Circuit Rule 34–4 and Fed.R.App.P. 34(a).

of 18 U.S.C. § 545. Columbus now challenges the district court's denial of his motions to amend certain alleged factual inaccuracies in his presentence report. We affirm.

## I.

Based on a preliminary determination that Japanese-made semiconductors were being sold in the United States at less than fair value, the United States Department of Commerce in March 1986 imposed a provisional import tariff on dynamic random access memory semiconductors of 256 kilobits ("256K DRAMs") and above. These trade restrictions drastically affected the United States market for 256 DRAMs.—Supplies of semiconductors in the United States grew increasingly scarce, while domestic customer demand for these products continued unabated. Such market forces prompted many to circumvent the trade regulations and tariffs on 256 DRAMs by smuggling Japanese-made chips into the United States for sale on the domestic market. On August 7, 1986, the United States Department of Commerce suspended its antidumping duty investigation on Japanese-made 256K DRAMs and ordered refunds for cash deposits or bonds which had been posted for these chips pursuant to the March regulations.

Columbus, as the owner and operator of Columbus International, a small electronics company specializing in the purchase and distribution of semiconductor and integrated computer circuitry, was greatly affected by these regulations on the importation of 256K DRAMs. In order to obtain the now-scarce Japanese-made semiconductors, Columbus engaged in a scheme of purchasing 64K and 256K DRAMs in Japan and then smuggling these chips into the United States through Vancouver, British Columbia without proper declaration or payment of relevant tariffs.

In connection with Columbus' efforts to illegally import 64K and 256K DRAMs, a federal grand jury on July 2, 1987, returned an indictment against Columbus. The indictment alleged that from March 1986 through July 1986 Columbus operated a systematic smuggling operation illegally importing into the United States approximately 641,000 DRAMs of Japanese manufacture. Specifically, this 13–count indictment charged Columbus with conspiring to smuggle semiconductors into the United States in violation of 18 U.S.C. § 371, importing semiconductors into the United States without appropriate declarations in violation of 18 U.S.C. § 545, making false declarations to the United States Customs Service in violation of 18 U.S.C. §§ 1001 and 1002, and conceiving a scheme to defraud the United States in violation of 18 U.S.C. §§ 1342 and 1343. Columbus subsequently entered into a plea agreement in which he agreed to plead guilty to two counts of violating § 545 in return for the dismissal of the remaining 11 counts of the indictment.[1]

Prior to sentencing, the United States Probation Office prepared a presentence investigative report [hereinafter "PSIR"] which assessed Columbus' background and criminal conduct and provided recommended classification for his offenses under the federal sentencing guidelines. *See* Fed.R.Crim.P. 32(c). Thereafter, the parties filed a flurry of memoranda bearing on the factual accuracy, or lack thereof, of the PSIR.[2] Columbus' allegations of factual inaccuracies in the PSIR encompassed four broad categories of error: overstatement of the Government's revenue "loss" of $397,783.06 from his smuggling activities, overstatement of Columbus International's monthly "gross receipts" from smuggled DRAMs as rebounding from a $5,000 loss in late 1985 to $250,000 by August 1986, mischaracterization of Columbus Interna-

---

**1.** Specifically, Columbus agreed to enter guilty pleas to Counts II and VII of the indictment. Counts II and VII charged Columbus with the non-declaration or smuggling of 256K DRAMs into the United States on April 1, 1986 and July 31, 1986, respectively.

**2.** *See* Sentencing Memorandum of Government, CR 39; Defendant's Response to Presentence

Report, CR 40; Government's Supplemental Sentencing Memorandum, CR 43; Declaration of Paul Savas Columbus in Response to Government's Supplemental Sentencing Memorandum, CR 44; Continuing Opposition of Defendant Paul Savas Columbus to Presentence Report, CR 47.

tional's business as based 80% on smuggled DRAMs, and inclusion of factual information underlying the dismissed counts of the indictment.

On January 8, 1987, the district court held a sentencing hearing addressing Columbus' allegations of inaccuracy in the PSIR. During the course of the hearing, the court made oral findings of fact with respect to each of Columbus' above-described claims. The court largely rejected his view of PSIR errors and thereafter imposed sentence of two years' imprisonment, a probationary term of four years, and $100,000 in fines for the two smuggling counts. Columbus subsequently filed a post-sentencing motion to amend the PSIR which was also denied by the district court.[3]

Columbus now appeals the district court's denial of his requests to amend his PSIR. Reasserting his four broad categories of factual error, Columbus alleges that the district court's failure to strike or amend this factually inaccurate and misleading information violated his Fifth Amendment due process rights and, as a result, requests this court to vacate or set aside his sentence.

## II.

■■■ A district court may generally consider a wide variety of information when imposing sentence so long as that sentence is not based on misinformation of constitutional magnitude. *See, e.g., United States v. Monaco,* 852 F.2d 1143, 1149 (9th Cir.1988), *cert. denied,* — U.S. —, 109 S.Ct. 864, 102 L.Ed.2d 988 (1989); *United States v. Messer,* 785 F.2d 832, 834 (9th Cir.1986); *see also* 18 U.S.C. § 3577. Violations of a defendant's due process rights occur when a court relies on materially false or unreliable information in sentencing. *United States v. Safirstein,* 827 F.2d 1380, 1385 (9th Cir.1987); *Messer,* 785 F.2d at 834; *United States v. Weston,* 448 F.2d 626, 631 (9th Cir.1971), *cert. denied,* 404 U.S. 1061, 92 S.Ct. 748, 30 L.Ed.2d 749 (1972). Thus, to make a due process challenge to a PSIR, a defendant must show that the disputed information is (1) false or

unreliable, and (2) demonstrably made the basis for his or her sentence. *Messer,* 785 F.2d at 834; *United States v. Ibarra,* 737 F.2d 825, 827 (9th Cir.1984).

■■■ We need not address the second requirement of this due process test, as examination of the record reveals that none of the PSIR statements challenged by Columbus was founded on false or unreliable information.

Three of Columbus' claims of PSIR error relate to alleged computational or accounting-type errors in calculating Columbus International's percentage of business and receipts attributable to smuggled DRAMs, as well as the extent of the Government's revenue loss from his smuggling activities. The PSIR's calculation of these disputed figures, however, were reached by accurate and reliable means which fully comported with due process standards. *Cf. Monaco,* 852 F.2d at 1149 (successful challenges to alleged PSIR errors must demonstrate that disputed information lacked "some minimal indicium of reliability beyond mere allegation"); *Safirstein,* 827 F.2d at 1385 (due process violated when sentence based on "unfounded assumptions or groundless inferences"); *United States v. Petitto,* 767 F.2d 607, 611 (9th Cir.1985) (due process considerations require only that sentencing information "supported by some minimal factual basis"). Moreover, the fact that the district court afforded Columbus ample opportunities, by way of memoranda and oral argument, to contest the PSIR's computational methods provides further support for our conclusion that due process standards were complied with in this case. *See United States v. Stephens,* 699 F.2d 534, 537 (11th Cir.1983) (opportunity to refute perceived discrepancies in PSIR fulfilled due process requirements). While Columbus may well believe that alternative methods of calculation for these figures would prove advantageous in the sense of placing him and his actions in a more sympathetic light, Columbus' claims do nothing to undercut the reliability or accuracy of the computational methods used in the PSIR.

---

**3.** Columbus challenged in this motion only the calculation of the Government's revenue loss and the inclusion of factual information related

to the dismissed counts of the indictment in the PSIR. *See* Order Denying Defendant's Request to Amend the Presentence Report at 1.

■ Columbus' contention that the PSIR erroneously contained factual information related to the dismissed counts in the indictment is also without merit. Due process principles pose no obstacle to a district court's consideration of facts underlying dismissed counts of an indictment. *Monaco*, 852 F.2d at 1149; *accord Roussell v. Jeane*, 842 F.2d 1512, 1523 (5th Cir.1988); *United States v. Martinez*, 584 F.2d 749, 750 (5th Cir.1978); *Billiteri v. United States Bd. of Parole*, 541 F.2d 938, 944 (2d Cir.1976).

Accordingly, since the disputed portions of Columbus' PSIR contained no false or unreliable information in violation of due process, the district court committed no error when rejecting Columbus' motions to correct or amend his PSIR.[4]

AFFIRMED.

---

**4.** We note that while the district court may have committed a technical violation of F.R.Crim.P. 32(c)(3)(D) by failing to attach written findings to Columbus' PSIR, we decline to address this question as Columbus has not raised this issue on appeal.